ALEXANDER, COUNTY SUPERINTENDENT OF EDUCATION, *v.*
STATE *ex rel.* COLMER.

(Division B. March 31, 1930.)

[127 So. 696. No. 28699.]

**H. P. Heidelberg**, of Pascagoula, for appellant.

Bullard & Bullard, of Hattiesburg, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

W. M. Colmer, district attorney, on the relation of Mrs. J. R. Baria, filed a suit for mandamus against W. M. Alexander, county superintendent of education of Jackson county, to compel the said superintendent of education to issue a teacher's pay certificate for teaching a public shool in the county embraced in what was alleged to be a consolidated school district composed of four rural schools. This consolidated school district was known as Orange Lake consolidated school district, and included, among other schools, the rural school of Kreole, a common school district prior to the alleged consolidation.

It appears that another person was also teaching school in this district of Kreole, and she claimed that the consolidated district was invalid, and that the trustees of the Kreole school district met and, elected teachers for said school, and certified their election of teachers to the county superintendent. The county superintendent, treating the consolidated school district as being regularly formed, contracted with Mrs. Baria and another to teach the school at Kreole, and contracted with others to teach the schools at the other regional school sites under the provisions of section 8747 of Hemingway's 1927 Code (Laws of 1924, chapter 283, section 112). This statute reads as follows:

"Where public schools have been formed into consolidated school districts and because of failure to erect the school building or for other reasons, the consolidated school is not taught, then the county superintendent of education is authorized and empowered to have the school taught as heretofore and so continue until such consolidated school is opened and in operation. In such schools the county superintendent and trustees of the consolidated schools are hereby authorized and empowered to run only such schools as they see fit and to furnish transportation if necessary. In these schools the county superintendent is authorized to issue pay certificates to teachers and to transportation contractors as in regular consolidated schools."

Mrs. Baria taught the school, but, as stated, there were conflicting claims, and during the fourth month of the school the superintendent visited the school, and after this visit wrote Mrs. Baria the following letter:

"Pascagoula, Miss., November 16, 1929.—Mrs. J. R. Baria, Pascagoula, Miss. Dear Mrs. Baria: Since talking with you at the school Monday I have carefully considered every phase of the situation in the Kreole school, and have decided that I can not be responsible for your salary as teacher after this date. If advised by counsel

that I am due to pay it in accordance with the facts in the case and the law, or if a court decision says I must pay it, I will. But I believe I am laying myself and bondsmen liable in paying for services after this date. Very truly yours,—Co. Supt.'' He also wrote to the trustees of the consolidated school district: ''I have this day formally notified Mrs. Baria that I cannot pay her salary as teacher of Kreole school for services performed after November 16th, unless judicial interpretation of the facts in the case tells me I am due to pay it. If the proper authority says I must pay it, then I will cheerfully comply.''

The original territory embraced in the Orange Lake consolidated school district contained territory in a municipal school district, and, on this being discovered, the school board met and rescinded the order creating it as of that territory, and re-created the Orange Lake consolidated school district by specifying the territory embraced therein by government subdivisions and sections, and attempted to locate the school building upon the Southeast quarter of Southeast quarter of Section 14, Township 7 South, Range 5 West. In canvassing the signers of the petition, the board found that there were one hundred fourteen patrons residing in the territory, and that sixty-four of these signed the petition for the creation of a consolidated school district. In the court below, it was contended that there must not only be a majority of the patrons in the consolidated district to be created, but there must also be a majority of each of the several schools comprising such district.

In the case of Geo. T. Parnell v. Trustees, Orange Lake Consolidated School District, 127 So. 280, this court held that the patrons were required to be a majority of the patrons of the district as a whole and not a majority of the patrons of each common school district. It also held that the attempted location of a schoolhouse was void because the description of the site was insufficient to amount to the required certainty of the site of the school

building. This was a proceeding to validate bonds, and the court held that the location of a school building was essential to the issuance of bonds, and for that purpose the district had not been created, following the decision in the Board of Supervisors of Marshall County v. Brown et al., 146 Miss. 56, 111 So. 831, 832. This latter case was also a proceeding to test the validity of bonds to be issued by the school district.

We think the present case can be distinguished from those cases; and for the purposes of creating the territory to comprise the district the proceedings were sufficient, but it was not complete for the purposes of issuing bonds because the location of the school building might vitally affect the vote upon that proposition. It will be noted from reading section 8747 of Hemingway's 1927 Code (section 112 of the School Code), that it is provided that, where public schools have been formed into consolidated districts, and because of failure to erect the school building *or for other reasons,* the consolidated school is not taught, etc. We think that in cases like the one before us where there was an effort to locate the school site, but which effort failed because of the uncertainty of description of the place of location, that the school may be taught, under the provisions of this section, until the school building site has been located and the school building erected. It will be noted that the trustees of the consolidated schools are authorized and empowered to run only such schools as they see fit and furnish transportation, if necessary, and that in these schools the county superintendent is required to issue pay certificates to teachers and transportation contractors as in a regularly consolidated school.

In the case of Board of Supervisors of Marshall County v. Brown, supra, the court clearly intimated that the board need not locate the school building at the same

meeting or the same time the district was created. In the opinion Judge HOLDEN, speaking for the court, said: "But it is urged by appellant that the postponement of the location of the schoolhouse was a matter within its discretion, and that the statute did not prevent the board from delaying the location for more mature consideration until such time as the board had reached a conclusion as to where the schoolhouse should be located; that the delay in the location of the schoolhouse ought not to be considered as a failure to locate it, as required by the statute, because the location may be designated by the board at any time in the future.

"We cannot agree with the view contended for by counsel. It may have been all right for the board to have delayed the location of the schoolhouse for further consideration, after the district had been formed by the school board, but the location of the schoolhouse was certainly required before the election to issue bonds was held, and the matter voted on by the residents of the district."

In the case before us the location of the school building was void because of the uncertainty, but the school board in locating the school building thought, in good faith, that the description of the territory was sufficient, and proceeded under the statute above cited to have the school taught pending the erection of the building. Before the building in this case could be erected, it was necessary for the voters to approve a bond issue to procure the funds. The superintendent in good faith appointed the trustees of the consolidated school district, and they selected Mrs. Baria and others to teach the particular school involved, and gave a contract as provided by law, and she accepted the contract and was teaching the school. It would be a great mischief, it seems to us, to hold that all steps in teaching the school under section 8747 were void, where there was an effort to locate the school building and it was insufficiently located to con-

stitute legal certainty measured by the standards of the law, and where people had gone on in good faith believing the proceedings were all right and acting thereunder. Such a holding would serve no useful purpose, but would be full of mischief, in that teachers and officers dealing with the school funds would be without any remedy, although they had acted in good faith, believing that everything was legal and regular. Section 8747 seems to provide for the teaching of the school where the school building is not erected, or for any reason by which the school cannot be regularly taught during the time being at the place desired for the permanent school site.

It is also contended that the judgment in favor of Mrs. Baria was wrong because there was not a sufficient number of students in attendance to warrant the continuance of a school, and that the superintendent had notified the teacher to discontinue the school. We do not think the notice given by the superintendent amounted to an effort by him to discontinue the school because of the insufficient number of pupils. It is manifest that he was influenced by the situation that two schools were being operated, each claiming to be legal, and that he might be held liable if he paid out funds to one of these teachers should the court decide that the school taught by such teachers was not the legal school, and that he was merely seeking a legal adjudication of the question for the purpose of protecting himself, his bondsmen, and the public funds of the school. He did not order the school discontinued and he did not call attention to the insufficient number of students in attendance; however, the students in attendance averaged above five during each month, varying somewhat; but we think it would not operate per se to discontinue the school if there were less than five students in attendance during a month. The superintendent must order the discontinuance on that ground before it would operate to a discontinuance of the school.

Again we find under the statute that students living outside of a district may attend a school in a district in which they do not live by getting the consent of the trustees of both the district in which they live and the district in which they attend and the approval of the superintendent of education. There is nothing to show that the children living out of the district were not rightfully attending it, and, if they were, their attendance would be counted in making the general average the same as resident students.

The court below held in accordance with these views, and the judgment will be affirmed.

Affirmed.